IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| Q2 SOFTWARE, INC., | § | |
| Plaintiff, | § § § | |
| v. | § | 1:18-CV-878-RP |
| RADIUS BANK, | § § § | |
| Defendant. | § § | |

## ORDER

The Court has considered Plaintiff Q2 Software, Inc.'s ("Q2") motion for continuance and for sanctions, (Dkt. 50), Defendant Radius Bank's ("Radius") response to that motion, (Dkt. 57), Q2's prior motion to compel Radius's production, (Dkt. 28, 32), Q2's renewed motion to compel and motion for sanctions, (Dkt. 33), United States Magistrate Judge Susan Hightower's Order on those prior motions, (Dkt. 42), and the transcripts from both the January 9, 2020 telephone conference before Judge Hightower and the January 24, 2020 final pretrial conference before this Court. (Dkt. 48, 62). Having reviewed these documents, the relevant law, and the record as a whole, the Court will render default judgment in this case for Q2.

## I. BACKGROUND

The record in this case reflects the following:

1.  Q2 filed its original petition in Travis County District Court, Travis County, Texas on September 11, 2018. (Orig. Pet., Dkt. 1-1). Radius removed the action to federal court on October 16, 2018 based on diversity jurisdiction. (Notice of Removal, Dkt. 1).

2.  Q2's pleading asserts a claim for breach of contract. (Orig. Pet., Dkt. 1-1). Radius filed an answer on October 22, 2018 and has not asserted any affirmative defenses. (Answer, Dkt. 4).

3.  Q2 served document requests in March 2019. For nearly a year, Radius failed to

1

produce the vast majority of its responsive, non-privileged documents. (Dkt. 28, 33, 42, 50).

4.  In sworn deposition testimony, Radius's corporate representative witness falsely testified that Radius had performed email archive searches for emails and for documents for which it had not searched, which came after repeated representations from Radius's counsel that it had searched for and did not have any additional documents for production. (Dkt. 28, 33, 50).

5.  In November 2019, Q2 filed its first motion to compel, after which Radius admitted for the first time that it had in fact not searched or collected thousands of responsive archived emails and documents (Dkt. 28, 33, 50).

6.  The parties thereafter entered into an agreement under which they agreed to appropriate search terms pursuant to which Radius would produce all responsive, non-privileged documents by December 20, 2019. The parties submitted an agreed order on Q2's initial motion to compel to that effect. Radius produced no documents by December 20 and did not produce a single document prior to the Court's hearing on January 9, 2020 on Q2's motions to compel/motion for sanctions. (Dkt. 32, 33, 42).

7.  As a result, Q2 was forced to file a second motion to compel and motion for sanctions. (Dkt. 32). Judge Hightower granted Q2's motion on January 10, 2020. (Dkt. 42).

8.  In connection with these motions, Radius incurred two rounds of monetary sanctions. First, Radius agreed to pay $5,000 in attorneys' fees to Q2 for its sanctionable conduct relating to Q2's first motion to compel, which Judge Hightower later ordered Radius to pay. (Dkt. 42). Second, Judge Hightower ordered Radius to pay additional attorneys' fees for its sanctionable conduct relating to Q2's renewed motion to compel/motion for sanctions. (Dkt. 42). These sanctions did not deter Radius's continued misconduct.

9.  Radius was specifically warned in the Court's January 10, 2020 Order that if it failed to fully respond to the discovery requests or otherwise comply with the order by the deadlines set, it

might be subject to additional sanctions. (Dkt. 42 at 5 ("[If [Radius] fails to fully respond to Q2's discovery requests or otherwise comply with this Order by the deadlines set, it may be subject to additional sanctions.")).

10. Nevertheless, Radius did not comply with the January 10, 2020 Order, requiring Q2 to file another motion for sanctions just three days before the scheduled final pretrial conference. (Dkt. 50).

## II. LEGAL STANDARD

Under the plain language of Federal Rule of Civil Procedure 37(b)(2),"[i]if a party . . . fails to obey an order to provide or permit discovery," the district court has authority to "render[] a default judgment against the disobedient party." The Fifth Circuit has explained that a district court may award default judgment as a discovery sanction if two criteria are met: (1) the penalized party's discovery violation must be willful; (2) lesser sanctions would not substantially achieve the desired deterrent effect. *United States v. $49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2003). The Court may also consider "whether the discovery violation prejudiced the opposing party's preparation for trial, and whether the client was blameless in the violation." *Id.*

The district court may also impose default judgment as a sanction pursuant to its inherent powers. "When a party's deplorable conduct is not effectively sanctionable pursuant to an existing rule or statute, it is appropriate for a district court to rely on its inherent power to impose sanctions." *Carroll v. The Jacques Admiralty Law Firm, P.C.,* 110 F.3d 290, 292 (5th Cir. 1997). To impose sanctions against a party under its inherent power, a court must make a specific finding that the party acted in bad faith. *Toon v. Wackenhut Corr. Corp.,* 250 F.3d 950, 952 (5th Cir. 2001) (citing *Goldin v. Bartholow,* 166 F.3d 710, 722 (5th Cir. 1999)).

## III. DISCUSSION

After reviewing the record in this case, the Court determines that Radius's "dilatory and

obstructive conduct" warrants the extreme sanction of default judgment. *Gray v. MYRM Holdings, L.L.C.*, No. A-11-CV-180 LY, 2012 WL 2562369, at *4 (W.D. Tex. June 28, 2012), *report and recommendation adopted*, No. A-11-CA-180-LY, 2012 WL 13028852 (W.D. Tex. Aug. 6, 2012).

Radius has repeatedly disregarded Court orders. (Sched. Order, Dkt. 9; Order, Dkt. 42). First, Radius flouted this Court's Scheduling Order by withholding thousands of responsive documents in this matter for almost a year, necessitating a motion to compel after the discovery deadline. (Sched. Order, Dkt. 9). Then, after Q2 worked in good faith with Radius to extend the discovery deadline, Radius again failed to deliver responsive discovery, necessitating another motion to compel. (Mot. Compel, Dkt. 33). After Judge Hightower entered her order granting Q2's motion to compel and setting clear deadlines for Radius's production, Radius again failed to timely produce the required documents, necessitating a motion for continuance and sanctions on the eve of trial. (Order, Dkt. 42, at 5–6; Mot. Continuance & Sanctions, Dkt. 50, at 6–7; *see also* Radius Resp., Dkt. 57, at 3–4 (agreeing that Radius missed the production deadlines set by Judge Hightower)). This pattern of discovery misconduct warrants the imposition of the extreme sanction of default judgment. The Court makes the additional findings required for default judgment below.

### A. Willfulness and Bad Faith

While Radius contends the requisite "bad faith or willfulness" for the imposition of severe sanctions "is missing here," (Radius Resp., Dkt. 47, at 5), it has offered no other explanation for its failure to comply with its discovery obligations, either in its written responses or at hearings before this Court. (*See* Radius Resp., Dkt. 57; Order, Dkt. 42, at 3–4 ("In its briefing and at the hearing, Radius provided no explanation for its failure to produce even a single document in more than a month.")). At the January 24, 2020 hearing, this Court asked Radius's counsel if he disagreed with any of the factual allegations of discovery misconduct in Q2'a motion for continuance and sanctions, (Dkt. 50), and counsel replied he did not. (*See* Hr'g Tr., Dkt. 62, at 3). This pattern of

4

discovery misconduct—without explanation—leads the Court to conclude Radius acted willfully and in bad faith.

### B. Deterrent Effect of Lesser Sanctions

The Court further finds that Radius's continued violations of Court orders after being monetarily sanctioned twice demonstrate that less drastic sanctions would be ineffective. *United States v. $49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2003) (noting default is appropriate only when a lesser sanction would not substantially achieve the desired deterrent effect); (Order, Dkt. 42). As the Court noted at the January 24, 2020 hearing, it is "demonstrably the case" that "less drastic sanctions have been ineffective" because "Judge Hightower's orders have not been effective in compelling the discovery that, again, should have been produced months ago." (Hr'g Tr., Dkt. 62, at 3–4).

Radius contends that while "Radius's failure to meet the deadlines in Judge Hightower's order was certainly regrettable . . . it did not result in any prejudice to Q2 because the requested continuance will cure that." (Radius Resp., Dkt. 57, at 5). The Court disagrees. Radius's discovery misconduct and failures to comply with court orders substantially prejudiced Q2's ability to prepare for trial in this case. Indeed, Radius's failure to produce the discovery ordered by Judge Hightower necessitated Q2's filing of a second motion for sanctions three days before the scheduled final pretrial conference. (Dkt. 50). Given Radius's pattern of discovery misconduct in this case, the Court concludes a continuance would only prolong the inevitable; that is, if this case were continued, Q2 would likely find itself, once more, on the eve of trial without Court-ordered discovery.

Based on the above findings and pursuant to the Federal Rules of Civil Procedure and the

Court's inherent power to sanction, the Court renders default judgment against Radius.[1] *See, e.g. $49,000 Currency*, 330 F.3d at 376.

## IV. DEFAULT FINDINGS

Accordingly, the Court finds that the facts contained in Q2's original petition are taken to be established for the purposes of this action, including but not limited to the following findings:

    a.    Q2 and First Trade Union Bank, now known as Radius Bank, entered into a Master Data Processing Services Agreement ("Agreement"). Pet. ¶ 7. Under that Agreement, Q2 provided a limited license to Radius to certain Q2 Services. *Id.*

    b.    Among the services provided under the Agreement were "FIS Bill Payment" services by which Radius' customers could pay their bills online. *Id.* ¶ 8. FIS is a third-party company whose services/products Q2 offers; FIS would process the bill pay transactions for Radius customers. *Id.* This service involves the risk that at times FIS will pay bills though the customer does not have sufficient funds in the Radius deposit account to cover the payment. *Id.*

    c.    Among other things, Radius is responsible under the Agreement for unfunded payments involving fraudulent activity. *Id.* ¶ 9.

    d.    Radius's accounts have a history of unfunded online payments that are fraudulent. Pet. ¶ 10. Radius is in the best position to mitigate the risks of fraudulent activity, particularly given the unusual amount of fraud associated with its accounts. *Id.*

    e.    Under the Agreement, Q2 contractually disclaimed any liability for any

---

[1] The Court received Radius's notice requesting "an opportunity to be heard and to address these issues in more detail" before the Court enters an order of default. (Notice, Dkt. 63, at 1). After providing Radius with the opportunity to be heard—on motion and at the January 24, 2020 hearing—the Court announced its resolve to enter default in favor of Q2. (Radius Resp, Dkt. 57; Hr'g. Tr., Dkt. 62, at 3–4). Radius's recent change in legal strategy and counsel does not occasion a reevaluation of this determination. Should Radius wish to contest the relief, it may do so by filing a motion for reconsideration.

occurrence of fraud or any failure by Metavante (the FIS entity involved) to decline any fraudulent transaction in connection with bill pay, and Radius expressly agreed to indemnify and hold Q2 harmless from all losses, damages, liabilities, costs, and expenses arising in connection with occurrences of fraud or any failure by Metavante to decline fraudulent transactions. *Id.* ¶¶ 11–12.

f. Since 2016, Radius has identified more than $500,000 worth of fraudulent transactions for which it has refused to take responsibility. *Id.* ¶ 16. Radius itself identified the transactions at issue as fraudulent activity. *Id.* ¶ 13.

g. FIS required Q2 to cover these losses, and Q2 has come out of pocket for more than $500,000 in connection with these losses. *Id.* ¶ 17.

h. Radius has refused and failed to indemnify and hold harmless Q2 for these transactions. Pet. ¶¶ 13, 16.

i. Radius has breached its contract with Q2 and thereby caused Q2 to suffer damages in excess of $500,000, excluding fees and interest. *Id.* ¶¶ 14, 19–21.

j. The Agreement also provides that Radius had the sole responsibility to ensure that accounts were used by only authorized personnel; to immediately report to Q2 any unauthorized use of any account or other breach of security; and immediately report to Q2 and use reasonable efforts to stop any misuse of the Q2 Services known or suspected by Radius. *Id.* ¶ 14. Radius further agreed that it would undertake reasonable efforts to minimize unfunded payments. *Id.* Given the history of fraudulent activity involving Radius accounts, Radius also has breached these provisions. *Id.*

k. Q2 has complied with the Agreement. *Id.* ¶ 19.

l. Q2 is entitled to recovery of attorneys' fees and costs/expenses pursuant to the provisions of the Agreement. *Id.* ¶ 23.

## V. RELIEF

Q2's claim for actual damages is for a sum certain or a sum that can be made certain based on computation. Based on Q2's submissions, the amount of actual damages to which Q2 is entitled (apart from fees, expenses, and interest) is $501,239.64.

Q2 also is entitled to an award of attorneys' fees, as well as expenses/costs, in amounts that the Court shall award after consideration of Q2's submissions regarding such fees and expenses/costs. Q2 also is entitled to pre- and post-judgment interest on the foregoing amounts.

## VI. CONCLUSION

Accordingly, **IT IS ORDERED** that Q2's request for sanctions is **GRANTED**.

**IT IS FURTHER ORDERED** that default judgment is rendered against Radius and in favor of Q2.

**IT IS FURTHER ORDERED** that, pursuant to Federal Rule of Civil Procedure 54(d) and Local Rules CV-7(j) and CV-54(a), Q2 should submit a motion for attorneys' fees and proposed bill of costs within **fourteen days** of the entry of final judgment consistent with this Order.

**IT IS FINALLY ORDERED** that because the Court has rendered default judgment against Radius as a sanction, Q2's request for continuance is **DENIED** as moot.

**SIGNED** on February 7, 2020.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE