UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| Q2 SOFTWARE, INC. | § § § | |
| *Plaintiff*, | § § | CIVIL ACTION NO. 1:18-cv-00878-RP |
| v. | § § | |
| RADIUS BANK | § § | |
| *Defendant*. | § § § | |

**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND COSTS**

COMES NOW Plaintiff Q2 Software, Inc. ("Q2") and, pursuant to Federal Rule of Civil Procedure 54(d), Local Rule CV-7(j), and Local Rule CV-54, files this Motion for Attorneys' Fees, Expenses, and Costs[1] and would respectfully show the Court the following:

## INTRODUCTION

Q2 seeks to recover the reasonable and necessary attorneys' fees, expenses, and costs it incurred in having to litigate Radius Bank's ("Radius") failure to abide by its contractual obligations. This Court has entered default judgment against Radius as a result of Radius' willful and bad faith discovery misconduct and has awarded Q2 the full amount of damages it sought in this lawsuit, $501,239.64. The Court also has determined that Q2 is entitled to an award of attorneys' fees, expenses, and costs. Accordingly, the issue left to be decided is the amount of fees, expenses, and costs to be awarded. Q2 originally sought to recover $286,871 in attorneys' fees; however, as a compromise, the parties have agreed to stipulate that $275,000 in attorneys' fees is a reasonable and necessary amount.[2] Through this motion, Q2 therefore seeks to recover $275,000 in attorneys' fees, as well as $38,301.17 in expenses and costs.

## RELEVANT FACTUAL BACKGROUND

The parties entered into a Master Data Processing Services Agreement in 2013 ("Master Agreement"), under which Q2 provided a limited license to Radius to certain Q2 Services. *See* Default Findings, p. 6 (Dkt. No. 66). Among the services provided under the Agreement were "FIS Bill Payment" services by which Radius' customers could pay their bills online. *Id.* The

---

[1] The Court's February 7, 2020 Order instructs Q2 to "submit a motion for attorneys' fees and proposed bill of costs within fourteen days of the entry of final judgment consistent with this Order." Dkt. No. 66. However, Q2 files this motion now out of an abundance of caution in the event the Court intended for its Order to constitute a final judgment. Q2 also files concurrently herewith a proposed order on this motion as well as a proposed final judgment.
[2] Radius has agreed to this amount if fees are awarded but has indicated that Radius intends to file a motion for reconsideration and therefore does not agree that fees should be awarded.

Master Agreement contains a prevailing party attorneys' fees provision. *See* Ex. A-2 § 9.4. In 2015, the parties executed a Fraud Monitoring Sales Order, which became part of the Master Agreement, under which Radius purchased a service through which a third party, Fidelity National Information Services, Inc. ("FIS"), would monitor Radius' customers' bill pay transactions for fraudulent activity. *See* Ex. A-3. The Fraud Monitoring Sales Order required Radius to indemnify and hold Q2 harmless for any amounts associated with fraudulent transactions, including reasonable attorneys' fees and expenses. *Id.* at p. 2.

In 2016 and 2017, Radius' customers engaged in hundreds of transactions involving fraudulent activity, and Q2 was required to pay FIS amounts relating to these transactions. Default Findings, p. 7. Q2 then sought indemnification from Radius per the terms of the parties' agreement, but Radius refused to indemnify Q2 and abide by its contractual obligations (among other breaches engaged in by Radius). *Id.*

Q2 ultimately was forced to bring the instant lawsuit in September 2018, which was removed to this Court by Radius based on diversity jurisdiction. Dkt No. 1. For virtually the entire lawsuit, Radius engaged in discovery misconduct, failing to abide by even the most basic discovery obligations, the most egregious example of which was its continued withholding of thousands of admittedly responsive documents until less than three weeks before trial. Dkt. No. 66; *see also* Declaration of Manasi Rodgers, attached as Ex. A, ¶ 12. Radius' discovery abuses imposed significant additional expense on Q2. *Id.*

Recognizing Radius' persistent discovery misconduct, this Court twice sanctioned Radius monetarily and thereafter entered default judgment against Radius as a sanction. Dkt Nos. 42, 66. The Court also issued findings that Q2 prevailed on its breach of contract claim and held that Q2 is entitled to recover the full amount of damages sought—$501,239.64. Dkt. No. 66. The Court

further held that Q2 is entitled to recover attorneys' fees, expenses, and costs, as well as pre- and post-judgment interest. *Id.*

The parties have conferred as to Q2's request for attorneys' fees. Although Radius has indicated that it plans to challenge Q2's right to recover attorneys' fees as well as the damages amount awarded through a motion for reconsideration and appeal if necessary, it is willing to stipulate that an award in the amount of $275,000 is reasonable and necessary in the event fees are awarded. *See* Ex. A-7. Radius is further willing to stipulate to a conditional award of $15,000 in attorneys' fees in the event of an unsuccessful post-judgment motion and $25,000 in attorneys' fees in the event of an unsuccessful appeal. *See id.*

## ARGUMENT AND AUTHORITIES

**I.  Q2 is entitled to an award of its reasonable and necessary attorneys' fees, expenses, and costs.**

As the Court previously determined, Q2 is entitled to an award of attorneys' fees, as well as expenses and costs.[3] The parties' contract provides two separate bases for Q2's recovery of attorneys' fees and expenses: (1) the indemnity provision contained in the Fraud Monitoring Sales Order provides that Radius "shall indemnify and hold Q2 harmless from, any and all demands, claims, actions, losses, damages, liabilities, costs, and expenses, including reasonable fees and expenses of counsel, arising in connection with any of the following . . . (a) any occurrence of fraud in connection with use of the Service . . . (d) any failure by Metavante to decline a fraudulent

---

[3] The Court also has determined that Q2 is entitled to pre-judgment and post-judgment interest. Because the parties' agreement does not address the rate at which pre-judgment interest should be awarded, prejudgment interest should be calculated pursuant to the Texas Finance Code, which provides a minimum prejudgment interest rate of 5%. TEX. FIN. CODE §§ 304.003, 304.103, 304.104. Here, Q2 is entitled to prejudgment interest of 5% per annum from the date the suit was filed, September 11, 2018, until the day preceding the date judgment is rendered, February 6, 2020, which amounts to $35,292.28. Q2 also is entitled to post-judgment interest to be calculated and compounded pursuant to 28 U.S.C. § 1961 on its damages, fees, costs/expenses, and pre-judgment interest, until paid in full.

transaction or to notify Q2 or [Radius] of a fraudulent transaction"; and (2) section 9.4 of the Master Agreement provides, "if any claim, suit or other proceeding is instituted to compel compliance with the provisions of this Agreement and/or to recover damages for the breach thereof, the prevailing party shall be entitled, in addition to any other remedies, to reimbursement of all reasonable expenses, including reasonable attorney's fees." Ex. A-2; Ex. A-3.

The award of attorneys' fees in a diversity action is governed by state law. *Northwinds Abatement, Inc. v. Emp'rs Ins. of Wausau*, 258 F.3d 345, 353 (5th Cir. 2001). Under Texas law, agreements that provide for the recovery of attorneys' fees are enforced. *See Rohrmoos Venture v. UTSA DVA Healthcare*, 578 S.W.3d 469, 484-86 (Tex. 2019). Texas law provides that when the prevailing party presents clear, direct, positive, and uncontroverted testimony regarding reasonable fees, the amount may be taken as true as a matter of law. *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990).

The Texas Supreme Court recently confirmed that the lodestar analysis is the appropriate method of proving reasonable and necessary attorneys' fees. *Rohrmoos*, 578 S.W.3d at 498 ("[T]he fact finder's starting point for calculating an attorney's fee award is determining the reasonable hours worked multiplied by a reasonable hourly rate, and the fee claimant bears the burden of proving sufficient evidence on both counts."). There is "a presumption that the base lodestar calculation, when supported by sufficient evidence, reflects the reasonable and necessary attorney's fees that can be shifted to the non-prevailing party." *Id.* at 499. Sufficient evidence of reasonable and necessary fees includes, at a minimum, evidence of (1) particular services performed; (2) who performed those services; (3) approximately when the services were performed; (4) the reasonable amount of time required to perform the services; and (5) the reasonable hourly rate for each person performing such services. *Rohrmoos*, 578 S.W.3d at 448.

After determining the lodestar amount, the Court may adjust the award of fees based on certain factors set out in *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812 (Tex. 1997).[4] "[I]t is well-established that the most critical [*Arthur Andersen*] factor in determining an award of attorneys' fees is the degree of success obtained by the victorious plaintiffs." *Northwinds Abatement, Inc.*, 258 F.3d at 354 (internal citation and quotations omitted). However, in *Rohrmoos*, the Texas Supreme Court made clear that most of the *Arthur Andersen* factors already are included in the base lodestar calculation and therefore "may not be used to enhance or reduce the base calculation to the extent they are already reflected in the reasonable hours worked and reasonable hourly rate." 578 S.W.3d at 501. Accordingly, "if a fee opponent seeks a reduction [of the base lodestar calculation], it bears the burden of providing specific evidence to overcome the presumptive reasonableness of the base lodestar figure." *Id.*

**II.   Q2's request for attorneys' fees of $275,000 is presumptively reasonable and the amount has been stipulated to by the parties.**

The base lodestar calculation in this matter results in $286,871, which is presumptively reasonable, particularly in light of Q2's unequivocal success on its breach of contract claim. This calculation is based on a conservative number of reasonable hours expended—1060.6—times a reasonable hourly rate.[5] Here, the parties have agreed to stipulate to an amount of $275,000. The

---

[4] The *Arthur Andersen* factors are: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. 945 S.W.2d at 818.

[5] As documented in the attached declarations, the relevant rates for each individual who billed time on this matter ranged from $165 to $475. Less than two hours of compensable time was billed at a rate higher than $375/hour. *See* Declaration of Beverly Reeves, attached as Exhibit B.

billing records attached hereto provide contemporaneous documentary evidence of the number of hours expended, the number of hours billed, the specific tasks and activities performed by each timekeeper, the date of the tasks performed, and any time that was voluntarily discharged by counsel. *See* Ex. A-1. These records also reflect that counsel appropriately exercised billing judgment in billing Q2 for the work performed in furtherance of Q2's breach of contract claim.

The number of compensable hours billed by Reeves & Brightwell on this case is reasonable (indeed, Radius has stipulated to almost all that time if fees are awarded). As of January 24, 2020 (the date through which Q2 seeks fees), Reeves & Brightwell performed 1,237.7 hours of billable work relating to this matter.[6] Ex. A-1; Ex. B ¶¶ 14-15. This is a conservative estimate of the hours expended, as there were significant hours spent working on tasks that are not reflected on invoices sent to Q2. Ex. B ¶ 16; Ex. A ¶ 7. However, Q2 claims only 1,060.6 hours as compensable hours for purposes of its lodestar calculation, as Q2 already has applied several downward adjustments to the amount sought as attorneys' fees. Ex. B ¶¶ 14-15; Ex. A ¶ 8. As documented in its contemporaneous billing records, counsel for Q2 has voluntarily discharged $53,240 in fees through January 24, 2020, including for time that was reasonably spent working on matters necessary for the litigation and discharged as an accommodation to Q2. *Id.*; Ex. A-1. Ryan Pierce, a partner at Reeves & Brightwell, reviewed each billing record, exercised appropriate billing judgment, and made adjustments when appropriate. *See* Declaration of Ryan Pierce, attached hereto as Ex. C. Although Q2 is entitled to recover them, Q2 also does not seek any fees after the date the Court indicated it would be entering default, January 24, 2020, nor does Q2 seek amounts associated with the drafting of this motion for fees and expenses, which results in additional

---

[6] Approximately 50 of these hours are related to two motions for which Radius already has paid sanctions of $14,073.50. Ex. B, n.2. Q2 does not take this amount into account in calculating the lodestar amount, and the fees sought are net of the sanctions. *Id.*

deductions of over $15,000 in fees.  Ex. B ¶ 16; Ex. A ¶ 9.  Finally, because the parties have stipulated to $275,000 in fees, rather than the lodestar amount of $286,871, Q2 has agreed to a further reduction of almost $12,000.  Ex. A ¶ 10; A-7.  These voluntary reductions underscore the reasonableness of the fee amount sought by Q2.

Also relevant to the reasonableness of the hours billed is Radius' discovery misconduct, which significantly increased the amount of fees and expenses Q2 was forced to incur.  Ex. A ¶ 13.  Radius' obstruction and failures to communicate are well-documented in the record and permeated every stage of this matter.  Dkt. Nos. 28, 32, 33, 42, 66.  Early in the lawsuit, after Radius repeatedly failed to produce any documents, Q2 was forced to prepare and send Radius a draft of a motion to compel, after which Radius produced fewer than 300 pages of documents.  Ex. A ¶ 13.  It took several additional threats (and preparations) of motions to compel before Radius produced a few hundred additional pages of documents and represented that it had completed its production.  *Id.*  Thereafter, for a five-week period in the summer of 2019, Radius stopped communicating entirely with Q2, resulting in Q2 having to file a motion for discovery conference with the Court.  *Id.*  Although Radius subsequently agreed to produce additional documents and transactional data by September 2019, it again represented before the scheduled Radius Bank depositions in October 2019 that it had produced all responsive documents.  *Id.*  However, during the October depositions, Radius finally confirmed that it had been improperly withholding key transactional data, as well as other documents and emails.  *Id.*  Q2 therefore had to reopen the deposition of Radius' corporate representative and incur additional time and expense to do so.  *Id.*  In total, Q2 was forced to prepare at least six different discovery-related motions between June 2019 and January 2020.  Ex. A ¶ 13; *see also* Ex. B ¶ 9.  Most egregiously, Radius withheld thousands of admittedly responsive documents in this matter until mere weeks before trial,

requiring Q2 to have to prepare for trial and simultaneously try to review those documents and prepare yet another motion for sanctions. *Id.* The foregoing are merely some examples of Radius' misconduct in this matter that resulted in significantly increased fees and expenses to Q2.

In addition, despite numerous attempts by Q2 over the course of the litigation to reach settlement of this matter, including as late as December 2019 before trial preparation began in earnest, Radius steadfastly refused to meaningfully engage in settlement discussions. At the outset of the litigation, the parties attempted to schedule a mediation to resolve their dispute, but Radius ultimately declined to participate. Ex. A ¶ 14. Q2 thereafter made two very reasonable settlement offers to Radius; however, Radius refused even to provide a counteroffer. *See id.*; *see also* Ex. A-4.[7] In fact, it was not until after the Court indicated it would be entering default judgment that Radius for the first time made an offer of its own (which was significantly lower than even the damages to which Q2 was entitled, not accounting for fees or expenses). Ex. A ¶ 14.

Moreover, while this case was a relatively straightforward breach of contract dispute, it involved hundreds of individual transactions, involving obtaining, compiling, and analyzing data from multiple sources. *Id.* ¶ 15. For example, Q2 was required to engage in protracted, months-long negotiations with FIS, which both parties subpoenaed for data and communications relating to the fraudulent transactions at issue. *Id.* Although FIS ultimately produced the materials sought by Q2, it required Q2 to reimburse it for $10,000 in fees and costs it had incurred to compile the data. *Id.*; *see also* Ex. A-6. Accordingly, compiling evidence in support of liability and damages, and presenting that evidence in a way that was digestible to a jury, required extensive time and

---

[7] Per the Scheduling Order in this matter, Q2 attaches all written settlement offers that were exchanged between the parties during the pendency of the litigation.

labor. Ex. A ¶ 15. The foregoing considerations confirm that Q2's attorneys spent a reasonable amount of time in successfully pursuing this matter.

The hourly rates utilized by Reeves & Brightwell in this matter also are reasonable, and Radius does not object to the rates employed. *See* Ex. A ¶¶ 17, 21; Ex. A-7; *see also* Ex. B ¶ 11. Reasonable attorneys' rates "are to be calculated according to the prevailing market rates in the relevant community." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (internal citation omitted). The reasonable hourly rate for a particular community can be established through affidavits of attorneys practicing in the community. *Tollett v. City of Kennah*, 285 F.3d 357, 368-69 (5th Cir. 2002). Where rates are not contested, they are considered prima facie reasonable. *Lewallen v. City of Beaumont*, No. 1:05-cv-733-TH, 2009 WL 2175637, at *12 (E.D. Tex. July 20, 2009). Reeves & Brightwell's rates are in line with those charged in the Austin area and the Western District of Texas. Ex. B ¶ 11. Indeed, this Court already has reviewed the rates employed by Reeves & Brightwell in this matter and found "the fees to be necessary and reasonable for this community." Dkt. No. 60.

Finally, the *Arthur Andersen* factors do not require a reduction of the lodestar calculation here, because this is not one of "those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Rohrmoos*, 578 S.W.3d at 502. Accordingly, this Court should grant Q2's motion and award it the stipulated amount of $275,000 in attorneys' fees.

### III. Q2's requests for nontaxable expenses and taxable costs are reasonable.

Q2 also is entitled to recover its reasonable expenses and costs in the amount of $38,301.17, as reflected in the attached Bill of Costs and accounting of Q2's reasonable nontaxable expenses. Ex. D; Ex. E. The parties' agreement requires Radius to indemnify Q2 for costs and expenses,

including reasonable expenses of counsel relating to the fraudulent transactions at issue, and further provides that Q2, as the prevailing party in this lawsuit, be entitled to reimbursement of all reasonable expenses. Ex. A-2; Ex. A-3. Q2 also is entitled to recover its taxable costs pursuant to Federal Rule of Civil Procedure 54(d)(1) and 28 U.S.C. § 1920.

**IV.     Q2 should be granted a conditional award of future attorneys' fees.**

In Texas, "[i]t is well-settled that the trial court's award of attorneys' fees may include appellate attorneys' fees." *Jones v. American Airlines, Inc.*, 131 S.W.3d 261, 271 (Tex. App.—Fort Worth 2004, no pet.). Under the parties' agreement, Q2 is entitled to recover such fees under both the indemnity provision and the prevailing party provision. Ex. A-2; Ex. A-3. As a compromise, the parties have stipulated to conditional awards (if Q2 is awarded fees) of $15,000 in the event of an unsuccessful post-judgment motion and $25,000 in the event of an unsuccessful appeal, and Q2 therefore seeks those stipulated amounts. *See* Ex. A-7; *see also* Ex. B ¶ 18.

## PRAYER FOR RELIEF

Q2 respectfully requests that it be awarded the parties' stipulated amount of $275,000 in attorneys' fees and $38,301.17 in reasonable expenses and costs. In accordance with the parties' stipulation, Q2 further requests a conditional award of $15,000 in the event Radius files an unsuccessful post-judgment motion and a conditional award of $25,000 in the event Radius files an unsuccessful appeal. Q2 further requests all such other and further relief to which it may be entitled.

| Dated: February 21, 2020 | Respectfully submitted, |
|---|---|
| | REEVES & BRIGHTWELL LLP |
| | |
| | */s/ Manasi Rodgers* |
| | Ryan Pierce |
| | TX State Bar No. 24035413 |
| | Manasi Rodgers |
| | TX State Bar No. 24090361 |
| | 221 W. 6th Street, Suite 1000 |
| | Austin, TX 78701-3410 |
| | (512) 334-4500 |
| | (512) 334-4492 (fax) |
| | rpierce@reevesbrightwell.com |
| | mrodgers@reevesbrightwell.com |
| | |
| | **ATTORNEYS FOR PLAINTIFF** |

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(j) of the Local Rules of the Western District of Texas, I hereby certify that I have conferred with counsel for Radius Bank in a good faith attempt to resolve all disputed issues relating to attorneys' fees prior to making this motion. On the afternoon of January 21, Q2 and Radius were able to stipulate that, if awarded, an amount of $275,000 in attorneys' fees is a reasonable amount that Radius would not contest. Q2 and Radius were further able to stipulate that $15,000 and $25,000 would be reasonable amounts for conditional awards of attorneys' fees in the event of an unsuccessful post-judgment motion and an unsuccessful appeal, respectively. However, Radius notes that it does not believe Q2 is entitled to any fees, and it will be challenging those fees and the damages amount in its Motion for Reconsideration and potentially to the Fifth Circuit, if necessary. Radius has not agreed to stipulate to the amounts sought by Q2 as expenses and costs.

*/s/ Manasi Rodgers*
Manasi Rodgers

# **CERTIFICATE OF SERVICE**

       This is to certify that on February 21, 2020, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system and sent notification of such filing via electronic mail to the following:

       George H. Rau III
       HENNEMAN RAU LLP
       814 Walker Street, Suite 1440
       Houston TX  77002
       grau@hennemanrau.com

       Jon M. Talotta
       HOGAN LOVELLS US LLP
       8350 Broad St., 17th Floor
       Tysons, VA  22102
       jon.talotta@hoganlovells.com

       David M. Prichard
       PRICHARD YOUNG LLP
       Union Square, Suite 600
       10101 Reunion Place
       San Antonio, TX 78216
       dprichard@prichardyoungllp.com

       */s/ Manasi Rodgers*
       Manasi Rodgers